IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON WEAVER, | ) |
| Plaintiff, | ) 2:23-CV-2116 |
| v. | ) |
| DUSTIN BROZELL et al., | ) |
| Defendants. | ) |

# OPINION

**J. Nicholas Ranjan, United States District Judge**

Plaintiff Jason Weaver alleges Defendant City of Pittsburgh police officers—Defendants Dustin Brozell, Anthony Dilley, Nicholas Gadola, Ryan Tranter, and Maxfield Holz—assaulted him, falsely arrested and imprisoned him, and fabricated evidence to cover it up. These are serious and troubling accusations. But Mr. Weaver delayed too long in bringing his case; "even sympathetic plaintiffs must sue promptly." *Eng. v. City of Wilkes-Barre*, No. 22-2477, 2023 WL 2400698, at *3 (3d Cir. Mar. 8, 2023). Mr. Weaver's delay—as minimal as it is (about 10 days)—seals the fate of his case. The Court is constrained to dismiss it for being untimely under the two-year statute of limitations.

# BACKGROUND

Taking the allegations in Mr. Weaver's complaint as true, on December 4, 2021, Mr. Weaver accompanied family and friends to a bar/restaurant to celebrate his cousin's birthday. ECF 1, ¶¶ 12-13. The group eventually moved to a neighboring establishment, where security personnel booted Mr. Weaver's cousin for appearing drunk. *Id.* ¶¶ 14, 16-18. When one of the security guards "became confrontational with Mr. Weaver[,]" Mr. Weaver too left the property, deciding to wait for the rest of his family outside on the sidewalk. *Id.* ¶¶ 19-22. Apparently, that wasn't enough for the guard, who started yelling at him, "became inappropriately aggressive[,]" and

threatened to "'beat the fuck' out of [him]." *Id.* ¶¶ 24-25. Though Mr. Weaver never left the sidewalk, he did yell back and "flipped him the bird." *Id.* ¶¶ 27-28.

This commotion drew the attention of the Defendant police officers. *Id.* ¶¶ 30-31. When the officers approached, one "grabbed Mr. Weaver, spun him around, and slammed his face into tree." *Id.* ¶ 34. The group of officers "then slammed Mr. Weaver onto the ground[]" and "forcefully held" him there, "grinded his face into a metal manhole cover, and kneed him in the torso." *Id.* ¶¶ 35-36. They "continued to hold Mr. Weaver on the ground until he was handcuffed[,]" despite onlookers and his family "express[ing] concern . . . about [his] treatment and inability to breathe." *Id.* ¶¶ 38-40, 42. This all occurred even though Mr. Weaver never resisted or evaded arrest, was unarmed, and didn't physically or verbally threaten the officers. *Id.* ¶¶ 32-33, 66, 88-92.

After they restrained him, the officers lifted Mr. Weaver up and placed him against a fence. *Id.* ¶¶ 42-43. The officers' actions had left him with a "significant amount of blood running down his face" and "pour[ing] into his eyes and mouth." *Id.* ¶¶ 41, 44. As a result, when Mr. Weaver tried to speak, he inadvertently sprayed blood in one officer's face. *Id.* ¶¶ 45-46. The officers then arrested Mr. Weaver and took him to the hospital for treatment, before bringing him to jail, where he received further treatment. *Id.* ¶¶ 48-49.

Following his arrest, "to cover up and/or justify their brutal attack[,]" the officers conspired to "draft[] an affidavit of probable cause and police reports" that deviated "[a]t numerous points . . . from the body cam footage" and "embellished and/or omitted important facts" about their encounter. *Id.* ¶¶ 50, 52, 131-32. These led to "Mr. Weaver [being] charged with multiple felonies and misdemeanors." *Id.* ¶ 51. Mr. Weaver was arraigned in state court on these charges also on December 4, 2021. ECF 20-1.

After a bench trial, he was found not guilty of "all felonies and misdemeanors[,]" but guilty of two summary offenses: disorderly conduct hazardous/physical offensive condition and public drunkenness. ECF 1, ¶ 53; ECF 11-1, p. 3.[1]

Mr. Weaver alleges that the officers' actions caused severe physical and mental injuries, including a concussion, fractures, and "deep" and "serious" lacerations. ECF 1, ¶ 54. On December 14, 2023, he filed the present eight-count complaint alleging federal constitutional claims and state-law tort claims. ECF 1. Against the Defendant officers in their individual capacities, he brings, pursuant to 42 U.S.C. § 1983, claims of excessive force and false arrest/false imprisonment in violation of the Fourth and Fourteenth Amendments (Counts I-II); a Section 1983 conspiracy claim (Count III); and state-law claims of false arrest and false imprisonment, assault, battery, and intentional infliction of emotional distress (Counts V-VIII). He also brings, pursuant to 42 U.S.C. § 1983, a *Monell* claim in violation of the Fourth and Fourteenth Amendments against the City of Pittsburgh (Count IV).

Defendants moved to dismiss for failure to state a claim. The Court has received briefing from all parties (ECF 10, 20, 21), and so the motion is now ready for disposition.

---

[1] The Court takes judicial notice of these verdicts and considers them as "matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## DISCUSSION AND ANALYSIS[2]

Defendants raise several defenses to Mr. Weaver's complaint. The Court need not address all of them, because their statute-of-limitations defense is dispositive.

For the following reasons, the Court finds that all of Mr. Weaver's Section 1983 claims are untimely, and so will dismiss them, and will decline to exercise supplemental jurisdiction over the state-law claims.

### I. Mr. Weaver's Section 1983 claims are time barred.

Defendants' threshold argument is that the statute of limitations bars Mr. Weaver's Section 1983 claims against the Defendant officers. Defendants are right. "The running of the statute of limitations is an affirmative defense. A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint[,]" *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (cleaned up), and in any "documents properly considered at the motion to dismiss stage[,]" such as "matters of public record[.]" *Schmidt v. Skolas*, 770 F.3d 241, 249, 252 (3d Cir. 2014).[3]

"Section 1983 has no statute of limitations of its own, but borrows the statute of limitations from state personal-injury torts." *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018). Under Pennsylvania law, "[t]he statute of limitations for a § 1983 claim . . . is two years." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa.

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff. *Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

[3] Those documents include "exhibits attached to the complaint[,] matters of public record[,]" and "document[s] integral to or explicitly relied upon in the complaint[.]" *Schmidt*, 770 F.3d at 249 (cleaned up).

Cons. Stat. § 5524(2). Conversely, "[f]ederal law governs a cause of action's accrual date." *Kach*, 589 F.3d at 634. And under federal law, a claim accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013); *see also William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011) (accrual occurs "at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of all the facts could get it past a motion to dismiss for failure to state a claim").[4]

Here, no one disputes that a two-year statute of limitations applies. Based on that statute, the Court finds that Mr. Weaver's Section 1983 claims accrued on December 4, 2021—the date of the incident where force was used and when Mr. Weaver was arraigned in state court. ECF 20-1. Mr. Weaver filed his complaint on December 14, 2023, which is 10 days after the two-year statute had run, and so it is untimely.

To get around this, Mr. Weaver invokes Pennsylvania's "discovery rule," which tolls the statute of limitations to the point "the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another." *Adams v. Zimmer US, Inc.*, 943 F.3d 159, 163 (3d Cir. 2019); *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) ("[T]he discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct."). Pennsylvania's "inquiry notice" approach to the discovery rule is less friendly to

---

[4] The Third Circuit has separately explained—in a formulation that resembles the discovery rule, discussed below—that "a § 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which his action is based." *Wisniewski v. Fisher*, 857 F.3d 152, 157-58 (3d Cir. 2017) (cleaned up). That seems inconsistent with *Graham*, given *Graham* refused to read the (federal) discovery rule "to alter the date on which a cause of action accrues" because it would append a new element, knowledge, "to the substantive definitions of the claims to which it applies." *Graham*, 646 F.3d at 150. In the end, this doesn't matter, as the Court below considers the discovery rule in the context of Mr. Weaver's tolling arguments.

plaintiffs, as it "t[ies] commencement of the limitations period to actual or constructive knowledge of ***at least some*** form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021) (cleaned up) (emphasis added).[5]

"[T]he plaintiff attempting to apply the discovery rule bears the burden of demonstrating that he exercised reasonable diligence in determining the existence

---

[5] The Pennsylvania Supreme Court has referred to the rule as one that tolls the running of the statute of limitations after accrual, one that delays the accrual date itself, and has even sometimes used the terms interchangeably. *Compare Rice*, 255 A.3d at 247 (distinguishing the discovery rule from fraudulent concealment because the discovery rule "pauses the running of, or 'tolls,' a statute of limitations" (cleaned up)), *with Reibenstein v. Barax*, 286 A.3d 222, 235 (Pa. 2022) ("In discovery-rule cases, claims accrue only upon discovery of the injury and its cause[.]"), *and with Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011) (stating both "Pennsylvania's formulation of the discovery rule reflects a narrow approach to determining accrual for limitations purposes" and "the discovery rule suspends, or tolls, the running of the statute of limitations").

Ordinarily, "the distinction between the two concepts . . . makes no difference for purposes of deciding whether a claim survives a statute-of-limitations defense[.]" *William A. Graham Co.*, 646 F.3d at 148. But in the Section 1983 context, the distinction is material since the accrual date turns on federal law; at least conceptually, Pennsylvania's discovery rule wouldn't apply if it governed accrual rather than tolling. *Kach*, 589 F.3d at 639 ("The general rule is that state ***tolling*** principles also govern § 1983 claims." (emphasis added)). All that said, the Court isn't inclined to view it as a rule of accrual and upend precedent applying Pennsylvania's discovery rule to a Section 1983 case, based on what is probably the Pennsylvania Supreme Court's "definitional laxity in . . . [distinguishing] between accrual of a cause of action, and the tolling of a statute of limitations, particularly in the context of the discovery r[u]le[.]" *See Leonard v. City of Pittsburgh*, No. 2:13-455, 2013 WL 4541727, at *4 (W.D. Pa. Aug. 27, 2013), *aff'd*, 570 F. App'x 241 (3d Cir. 2014) (Hornak, C.J.) (cleaned up). Moreover, on at least one occasion, this Court has evaluated the relationship between accrual, tolling, and the discovery rule in a Section 1983 case, and concluded that Pennsylvania's "discovery rule is one of tolling, not of accrual." *Id.* at *3-5. The Court will therefore treat Pennsylvania's discovery rule as a tolling doctrine, and consider it here.

and cause of his injury." *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006). That means Mr. Weaver "must establish that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Id.* (cleaned up). "[T]he reasonable diligence determination is fact intensive, [so] the inquiry is ordinarily a question for the jury." *Nicolaou*, 195 A.3d at 893. Moreover, Mr. Weaver need not "make a showing of reasonable diligence . . . [and] plead around an affirmative defense in his complaint[.]" *Schmidt*, 770 F.3d at 252. But if "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." *Fine v. Checcio*, 870 A.2d 850, 858–59 (Pa. 2005).

      A.    **Mr. Weaver's Section 1983 excessive force claim is untimely.**

"Excessive force claims typically accrue on the date of the alleged assault because, at that point, the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Sorokaput v. Fare*, No. 21-2188, 2022 WL 3043154, at *1 (3d Cir. Aug. 2, 2022) (cleaned up).

The Defendant officers allegedly assaulted Mr. Weaver when they arrested him on December 4, 2021, so the statute of limitations accrued on that date. As he filed his complaint on December 14, 2023, his excessive force claim is late by ten days and so is barred by the two-year statute of limitations. Mr. Weaver has three arguments in response, but none persuade the Court.

First, he argues that his claim is saved by the discovery rule because he couldn't know that the force was "unreasonable under the circumstances" until he "received the body-cam footage and realized that the Defendants had exaggerated and misconstrued their actions[.]" ECF 20, p. 11. Not so. Mr. Weaver "was aware of his alleged mistreatment as it occurred on the date of his arrest[.]" *Large v. Cnty. of*

*Montgomery*, 307 F. App'x 606, 607 (3d Cir. 2009). Indeed, Mr. Weaver knew that he didn't resist the officers or evade arrest; that he didn't threaten the officers; and that he didn't possess a weapon. ECF 1 ¶¶ 32-33, 66, 88-92. Yet the officers' actions were so "abhorrent" that they prompted Mr. Weaver's family and onlookers to "express[] concern" about Mr. Weaver's treatment, and left him with immediately discernible and "severe" injuries. *Id.*, ¶¶ 40, 54, 70; ECF 20, p. 5.[6] So the discovery rule doesn't apply. *See Whitenight v. Commonwealth of Pa. State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) ("As [the plaintiff] was aware of his injuries when he was being arrested, which was over two years before he filed this lawsuit, the District Court correctly concluded that his claims were untimely."); *Kiriakidis v. Borough of Vintondale*, 609 F. App'x 713, 717 (3d Cir. 2015) (holding plaintiff's excessive force "claim accrued and was known to her on the evening" an officer allegedly threw her on the ground, pulled her by her shoulders, and threw her against a building, causing severe injuries).

Second, Mr. Weaver contends that the statute of limitations for his excessive-force claim is tolled by the discovery rule because he wasn't "aware of the physical damage to his head nor the mental health damage" until he was seen by medical professionals. ECF 20, p. 11. The Court again disagrees. "A cause of action accrues even though the full extent of the injury is not then known or predictable." *LabMD Inc. v. Boback*, 47 F.4th 164, 180 (3d Cir. 2022) (cleaned up). Mr. Weaver knew at least some injuries resulted from the officers' actions. ECF 20, p. 9 (some injuries "were readily apparent"); ECF 1, ¶¶ 54 (injuries included nose fractures and "deep"

---

[6] At most, the body-cam footage simply corroborates Mr. Weaver's own recollection of the events. The discovery rule doesn't toll the statute of limitations merely because **better** evidence was out of reach until the limitations period expired. *Rivera v. City of Phila.*, No. 18-2066, 2018 WL 3730854, at *3 (E.D. Pa. Aug. 3, 2018) (granting motion to dismiss because "better evidence . . . is not a valid basis for invoking the discovery rule").

and "serious" lacerations), 41, 44 (officers' actions caused blood to run down his face and pool in his eyes and mouth). That was enough to start the clock. "Were it otherwise, the statute would begin to run only after [Mr. Weaver] became satisfied that [he] had been harmed enough, placing the supposed statute of limitations in the sole hands of the party seeking relief." *LabMD Inc.*, 47 F.4th at 180 (cleaned up); *see also Rodwich v. Meisel*, No. 15-1228, 2016 WL 2643265, at *2 (W.D. Pa. May 10, 2016) (Fischer, J.) (excessive-force claim accrued on date plaintiff was roughly handcuffed and handled; because plaintiff was aware some injury occurred as a result, fact that he later learned from a physician the injuries were more severe didn't toll the statute of limitations); *E.J.M. v. Archdiocese of Phila.*, 622 A.2d 1388, 1394 (Pa. Super. Ct. 1993) ("[A]ppellant need not have known . . . precisely what type of psychological or emotional harm he would suffer as a result. Once he knew what was happening and who was doing it, he had the duty to investigate these questions and to institute suit within the limitations period.").

Third, without explicitly naming it, Mr. Weaver seems to be arguing that the statute of limitations is also tolled by fraudulent concealment. *See* ECF 20, p. 11 ("Defendants should not be rewarded for their active concealment of facts by now seeking to dismiss the Complaint as untimely.").[7] Under that doctrine of Pennsylvania law, "the statute of limitations is tolled where the defendant undertakes an affirmative and independent act of concealment that would prevent the plaintiff from discovering the injury despite the exercise of reasonable diligence." *Brown v. Buck*, 614 F. App'x 590, 592-93 (3d Cir. 2015) (cleaned up). The standard to be applied is the same as the discovery rule. *See Fine v. Checcio*, 870 A.2d 850, 861

---

[7] The Pennsylvania Supreme Court has described fraudulent concealment as "fall[ing] under [the] umbrella" of equitable tolling. *Rice*, 255 A.3d at 248 n.3. So the Court will consider its application here. *See, e.g.*, *Brown v. Buck*, 614 F. App'x 590, 592 (3d Cir. 2015) (examining Pennsylvania fraudulent concealment in Section 1983 case).

(2005) ("[A] statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause."); *see also Rice*, 255 A.3d at 252 ("[R]esolution of the application of the discovery rule . . . also resolves the application of the fraudulent concealment doctrine."). "The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence." *Fine*, 870 A.2d at 860. But like the discovery rule, Mr. Weaver need not plead around Defendants' affirmative defense. *Cf. Schmidt*, 770 F.3d at 252.

Mr. Weaver appears to base his fraudulent-concealment argument on Defendants' delaying turning over the bodycam footage, probable-cause affidavit, and police reports. The doctrine is inapplicable because none of these "conceal[ed Mr. Weaver's] injury or its cause[.]" *Brown*, 614 F. App'x at 593. As noted above, Mr. Weaver instead "knew of his injury the moment [he was arrested]. [So any] reliance on the doctrine of fraudulent concealment is thus misplaced." *Id.* (allegedly false report that officers shot plaintiff in self-defense didn't conceal plaintiff's injury, so fraudulent concealment didn't toll excessive force claim).

The Court will therefore dismiss Mr. Weaver's Section 1983 excessive force claim as untimely.

### B. Mr. Weaver's Section 1983 false arrest/imprisonment claim is untimely.

False arrest and false imprisonment claims accrue "when a plaintiff appears before the examining magistrate and is bound over for trial, i.e., once the victim becomes held pursuant to legal process[.]" *Geness v. Cox*, 902 F.3d 344, 354-55 (3d Cir. 2018) (cleaned up). Preliminary arraignment is legal process. *McCracken v. Wells Fargo Bank NA*, 634 F. App'x 75, 79 (3d Cir. 2015).

Mr. Weaver's preliminary arraignment occurred on the same date of his arrest, December 4, 2021. ECF 20-1. The statute of limitations for his false

arrest/imprisonment claim therefore accrued on that date, and this claim is also barred by the two-year statute of limitations.

Mr. Weaver contends that the discovery rule tolls the statute of limitations because "it would not have been apparent . . . that the arrest was made without probable cause[, an element of the cause of action, until] the date of the preliminary hearing" on March 3, 2022, and similarly because he couldn't know of "vital facts" pertaining to probable cause until he received the bodycam footage after the hearing. ECF 20, pp. 11-12.

This argument, "keying the commencement of the limitations period to [Mr. Weaver's] actual or constructive knowledge of [his] cause of action[,]" departs from Pennsylvania's discovery rule. *Wilson v. El-Daief*, 964 A.2d 354, 363 (Pa. 2009). "Inquiry notice" requires only "knowledge of at least **some form** of significant harm and of a factual cause." *Rice*, 255 A.3d at 247 (cleaned up) (emphasis added). Mr. Weaver may not have known that the officers ginned-up an affidavit of probable cause and police reports—but he did know that he never left the sidewalk during his verbal exchange with the security guard; re-entered the restaurant; resisted or ran from the officers; threatened the officers; or purposefully spit or sprayed blood on the officers when he spoke. ECF 1 ¶¶ 28-30, 32-33, 46-47, 66, 88-93. Yet the officers "falsely accused Mr. Weaver of assaulting police officers" and arrested him. *Id.* ¶ 47. Mr. Weaver's complaint reveals that he knew he was wronged. As that should have been enough to nudge him in the direction of investigating his legal remedies, the discovery rule doesn't apply. *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 352 (D.N.J. 2015) (discovery rule inapplicable to false arrest claim where plaintiff knew police likely lacked probable cause); *cf. Byrd v. Mangold*, No. 19-504, 2019 WL 5566752, at *4 (E.D. Pa. Oct. 28, 2019) (rejecting argument that malicious prosecution claim should be tolled by the discovery rule because plaintiff didn't learn of defendant's malfeasance until he received withheld affidavit where plaintiff knew the affidavit

existed; that "the prosecution did not have a case[;] . . . [that] he did not commit the crimes[;] . . . [a]nd he had reason to know of his injury by virtue of having spent six months in jail for crimes he did not commit").

The Court will therefore also dismiss Mr. Weaver's Section 1983 false arrest/imprisonment claim as untimely.

### C. Mr. Weaver's Section 1983 conspiracy claim is untimely.

"The statute of limitations for a § 1983 civil conspiracy is the same as that for the underlying action forming the basis of the conspiracy [and is therefore] subject to a two-year limitations period." *Wilson v. Bd. of Control of City of Harrisburg Sch. Dist.*, No. 1:10-0353, 2010 WL 4977056, at *5 (M.D. Pa. Dec. 2, 2010) (cleaned up). A Section 1983 civil conspiracy claim accrues on and runs separately for "each act causing injury[.]" *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993) (cleaned up).

"Unlike in the criminal conspiracy context, where the crime lies in the agreement itself, a cause of action for civil conspiracy requires a distinct underlying tort as a predicate to liability." *Glass v. City of Philadelphia*, 455 F. Supp. 2d 302, 359 (E.D. Pa. 2006). Here, the only underlying claims or underlying "acts causing injury" that are pled are those for the excessive force and false arrest/imprisonment claims. Therefore, for the same reasons that those claims fail, the derivative conspiracy claim fails, too. *See Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021) (dismissal of underlying federal claims "preclude[d their use] as the anchor violations for [plaintiff's] civil conspiracy claim, compelling dismissal of conspiracy claim); *see also Curbison v. U.S. Gov't of New Jersey*, 242 F. App'x 806, 810 (3d Cir. 2007) ("A civil conspiracy claim requires a separate underlying tort as a prerequisite for liability. [The plaintiff's] conspiracy claims were premised on the time-barred tort and constitutional claims against the Federal Defendants, and, because the underlying claims were properly dismissed, the conspiracy claims had to be dismissed as well." (cleaned up)).

### D. Mr. Weaver's Section 1983 *Monell* claim is untimely.[8]

Mr. Weaver also asserts a *Monell* claim against the City of Pittsburgh. For that claim, he essentially alleges that the City failed to implement appropriate policies to supervise and train the officers, which resulted in the excessive force and false arrest/imprisonment. Like his other Section 1983 claims, Mr. Weaver's *Monell* claim has a two-year statute of limitations. *Jones v. Gansky*, No. 23-2967, 2023 WL 6881050, at *5 (E.D. Pa. Oct. 17, 2023). And like a conspiracy claim, a *Monell* claim accrues on the date of the underlying constitutional violations. *Id.*; *see also Leonard v. City of Pittsburgh*, No. 2:13-455, 2013 WL 4541727, at *5 (W.D. Pa. Aug. 27, 2013) (Hornak, C.J.), *aff'd*, 570 F. App'x 241 (3d Cir. 2014).

As discussed above, Mr. Weaver's excessive force and false arrest/imprisonment claims accrued on the date of the arrest. His *Monell* claim against the City thus accrued then too. *See Leonard*, 2013 WL 4541727, at *5 (noting plaintiff's "constitutional injury at [the individual officer's] hands would have . . . been complete [during her encounter with the officer], and if her injuries were also the result of the City Defendants' policies or a practice of indifference towards her civil rights in place at that time, her claim against them would have then accrued as well"); *Jones*, 2023 WL 6881050, at *5 (*Monell* claims time barred where "[a]ll of the factual allegations supporting [them] took place . . . the day that the Defendants gained entrance to [the plaintiff's] residence by making up a story about a dropped 911 call");

---

[8] In their brief in support of their motion to dismiss, Defendants don't discuss dismissal of the Section 1983 *Monell* claim for failure to file within the statute of limitations. ECF 11, pp. 4-6. They do, however, ask the Court generally to "dismiss **all** of Plaintiff's [Section 1983] claims" on statute-of-limitations grounds. *Id.* p. 6 (emphasis added). There's a similar request in their motion to dismiss. *See* ECF 10, ¶¶ 7-10 ("Plaintiff fails to bring all claims within the applicable two-year statute of limitations. . . . Thus, all of Plaintiff's claims are time-barred, and should be dismissed with prejudice[.]"). Consequently, while there isn't briefing on the argument, Defendants did raise it, and Mr. Weaver was on notice of it, so the Court considers it here.

*Sanford-El v. Cannon*, No. 19-08776, 2020 WL 4745996, at *6 (D.N.J. Aug. 17, 2020) ("Plaintiff's alleged 'unlawful' encounters with the defendant officers, or the events that could serve as the basis for Plaintiff's claim under *Monell*, occurred more than two years from the date on which this action was filed.").

The discovery rule again doesn't help. "The injuries [Mr. Weaver] alleges involving the City are secondary to the true injury—the actions taken by [the Defendant officers]. [Mr. Weaver] knew of [his] injury by [the officers], and— importantly—[he] knew that [the Defendant officers were] police officer[s] employed by the City in [December 2021]. Exercising reasonable diligence, [he] could have discovered at that time a potential *Monell* claim against the City. Thus, [he] is not entitled to a tolling of the limitations period under the discovery rule." *Leonard*, 570 F. App'x at 245.

The Court will therefore dismiss Mr. Weaver's Section 1983 *Monell* claim as untimely.

### E. Mr. Weaver's generalized tolling arguments don't rescue his Section 1983 claims.

Mr. Weaver also proposes a few generally applicable reasons as to why the statute of limitations should be tolled. ECF 20, pp. 9-10. All but one are rehashed in his claim-specific arguments, so the Court won't discuss them again here.[9]

In the remaining argument, Mr. Weaver contends that without the bodycam footage and reports, he couldn't know "which officers were involved[.]" ECF 20, p. 10. That isn't a basis to toll the statute of limitations. "In general, the rule that a cause of action accrues upon discovery of the injury does not require that a plaintiff have

---

[9] Mr. Weaver argues that he "was in obvious, reasonable, and excusable ignorance of not only the extent of his injuries, but the nature of them as well[,]" and that until he received the police reports and bodycam footage, he couldn't know "the nature of [the Defendant officers'] actions[,]" nor of the "omissions and exaggerations . . . infest[ing]" the police reports. ECF 20, pp. 9-10.

identified every party who may be liable on its claim." *Graff v. Kohlman*, 28 F. App'x. 151, 154 (3d Cir. 2002). Mr. Weaver should have simply sued "John Doe" defendants, promptly sought discovery of their identities, and moved to include them in the suit. *See Gleeson v. Prevoznik*, 253 F. App'x 176, 180 (3d Cir. 2007) (discovery rule didn't apply where plaintiff could've identified the defendant by reasonable diligence or listed additional "John Doe" defendants).

## II.     The Court will dismiss Mr. Weaver's state-law claims.

District courts may exercise supplemental jurisdiction over state-law claims that are related to federal claims. 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction, however, if it has dismissed all federal claims. *Id.* § 1367(c)(3).

Because the Court is dismissing all the federal claims in the case, it declines to exercise supplemental jurisdiction over Mr. Weaver's Pennsylvania tort claims for now, and will dismiss them.

## III.    The Court will dismiss all claims without prejudice to allow Mr. Weaver an opportunity to move for leave to amend.

Given that the defects with the case are purely legal, the Court finds that amendment is likely futile. That said, given the Third Circuit's preference for granting leave to amend in civil rights cases and out of an abundance of caution, the Court will dismiss all claims without prejudice, at this juncture. *See Snyder v. Baxter Healthcare, Inc.*, 393 F. App'x 905, 910 (3d Cir. 2010).

If Mr. Weaver believes he can amend his complaint to state timely claims, he may file a motion for leave to amend, which shall include as an attachment a draft amended complaint. Such motion must be filed by November 8, 2024. If no motion is filed at that time, the Court will convert the dismissal of the federal claims into one with prejudice.

## CONCLUSION

For the above reasons, the Court will **GRANT** Defendants' motion to dismiss. An appropriate order follows.

Date: October 11, 2024                              BY THE COURT:

                                                    /s/ J. Nicholas Ranjan
                                                    United States District Judge